**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Health Care Cost Containment System, | No. CV-21-00952-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Centers For Medicare and Medicaid Services, | |
| Defendant. | |

This lawsuit arises from a long-running dispute between a state agency, the Arizona Health Care Cost Containment System ("AHCCCS"), and a federal agency, the Centers for Medicare and Medicaid Services ("CMS"), over about $20 million in Medicaid funding. In December 2019, an administrative board issued a decision affirming CMS's disallowance of AHCCCS's claim for the disputed funds, but the board allegedly never sent its decision to AHCCCS's counsel. By the time counsel became aware of the decision, the statutory deadline for seeking judicial review had expired. AHCCCS now seeks relief from this Court pursuant to Rule 60(d)(1) of the Federal Rules of Civil Procedure, which preserves the federal courts' power to "entertain an independent action to relieve a party from a judgment, order, or proceeding." CMS, in turn, moves to dismiss on a variety of grounds. (Doc. 11.)

As explained below, the Court agrees with CMS that AHCCCS has used the wrong vehicle for bringing this action—there is simply no need to resort to the obscure

"independent action" doctrine, or invoke Rule 60(d), because an existing federal statute, 42 U.S.C. § 1316(e)(2)(C), enables AHCCCS to pursue exactly the sort of relief it seeks in this case. The real question is whether AHCCCS may be entitled to equitable tolling under that statute, which would excuse its failure to comply with the statutory deadline for seeking review. The Court concludes that AHCCCS has identified facts that would be sufficient to trigger equitable tolling. Thus, CMS's motion to dismiss the complaint in its current form is granted but AHCCCS's request for leave to amend is also granted.

**BACKGROUND**

I.  Relevant Facts

The facts set forth below are derived from the operative complaint. (Doc. 5.)

The plaintiff in this action, AHCCCS, "is the state agency responsible for administering Arizona's Medicaid program." (*Id.* ¶ 1.) The defendant, CMS, "oversees . . . state Medicaid programs" on behalf of the federal government. (*Id.*)

In Arizona, "public and charter school districts . . . receive Federal reimbursement through AHCCCS for providing Medicaid services, e.g., nursing, behavioral health, and physical, occupational, and speech therapy services, to eligible students." (*Id.* ¶ 10.) Pursuant to this process, AHCCCS submitted reimbursement requests to CMS "for costs associated with providing direct (face-to-face) Medicaid services to Medicaid-eligible school children under the Individuals with Disabilities Education Act (IDEA) during the period from January 1, 2004, through June 30, 2006." (*Id.* ¶ 2.)

Afterward, the Office of Inspector General ("OIG") of the Department of Health and Human Services ("HHS") conducted an audit of the claims submitted by AHCCCS "by selecting a sample of 100 student-months." (*Id.* ¶ 12.)[1] OIG concluded, based on this audit, that $21,288,312 of the claims should be disallowed. (*Id.*) OIG announced this recommendation in March 2010. (*Id.*)

Over the next eight years, AHCCCS and CMS engaged in "several discussions"

---

[1]   "A student-month means 'all paid Medicaid school-based health services provided to an individual student for a calendar month.'" (*Id.*)

concerning OIG's recommendation, with AHCCCS "vigorously" contesting the recommended disallowance. (*Id.* ¶¶ 13, 17.) Finally, on June 26, 2018, "CMS issued a final disallowance of federal reimbursement for these direct services in the amount of $19,923,489." (*Id.* ¶¶ 3, 13.) AHCCCS, in turn, timely appealed the disallowance to the Health and Human Services Departmental Appeals Board ("DAB"). (*Id.* ¶ 4.)[2]

On December 27, 2019, DAB issued a final decision upholding CMS's disallowance. (*Id.*)

AHCCCS intended to seek further review of any unfavorable decision. (*Id.* ¶ 24.) As alleged in the complaint, AHCCCS could seek such review by filing a notice of appeal "during the 60-day period that begins on the date the State receives notice of the" decision. (*Id.* ¶ 5 [citing 42 U.S.C. § 1316(e)(2)(A)].) AHCCS alleges it "would have filed a timely appeal had counsel known of the DAB decision." (*Id.* ¶ 24.)

The current dispute turns on the circumstances under which AHCCCS received notice of the DAB's decision. As alleged in the complaint, "[t]he DAB does not send parties paper copies of its decisions; it notifies parties of its decisions by e-mail to the parties' counsel of record." (*Id.* ¶ 18.) However, AHCCCS's counsel in this matter ("Counsel"), who also represented AHCCCS during the DAB appeal, "did not receive notification of the December 27, 2019 decision" even though he "watched daily for a decision." (*Id.* ¶ 19.) Counsel did not become aware of the decision until May 8, 2021, when he "searched the DAB website to determine whom to contact about the length of time the decision seemed to be taking." (*Id.* ¶ 19.) The DAB reported that its records reflect that the decision was emailed to Counsel on December 27, 2019 at 11:09 a.m. (*Id.* ¶ 20.) Counsel's "computer was working properly on December 27, 2019, and retains the messages he received, deleted or archived that day," so "[t]he lack of receipt is therefore a mystery." (*Id.* ¶ 21.)

---

[2]  AHCCCS "waived its option of retaining the [disputed] funds pending a final decision on its challenge to the disallowance." (*Id.* ¶ 14.) Instead, the State of Arizona "returned the $19,923,489 in dispute to CMS by means of a decreasing adjustment to its December 31, 2018 Medicaid Statement of Expenditures Form CMS-64." (*Id.*)

On January 16, 2020, the "AHCCCS Business and Finance Department received a copy of the decision from CMS." (*Id.* ¶ 22.) The members of this office did not, unfortunately, forward a copy to AHCCCS's attorneys because they "did not realize the agency's attorneys did not know of the decision." (*Id.*)

II.     Procedural History

On June 1, 2021—less than a month after Counsel became aware of the DAB's decision—AHCCCS initiated this action by filing a complaint. (Doc. 1.)

On June 2, 2021, AHCCCS filed the first amended complaint ("FAC"). (Doc. 5.)

The FAC is styled as an "Independent Action for Equitable Relief from Judgment under Federal Rule 60(d)(1)" and asks the Court to allow the appeal to proceed, vacate the DAB decision, "[s]et aside the underlying disallowance upheld by that decision, remand the matter to the DAB to determine a disallowance that is statistically valid, and require CMS to return or credit the remainder to AHCCCS." (*Id.* at 1, 7.)

On August 6, 2021, CMS moved to dismiss. (Doc. 11.)

On September 9, 2021, AHCCCS filed a response. (Doc. 16.)

On September 21, 2021, CMS filed a reply. (Doc. 17.) Neither side requested oral argument.

**DISCUSSION**

I.      The Parties' Arguments

CMS moves to dismiss this action for three reasons. (Doc. 11.) First, CMS argues this Court lacks subject-matter jurisdiction because "[a]n independent action pursuant to Rule 60(d) requires an independent basis for subject matter jurisdiction," yet AHCCCS has not alleged and demonstrated an independent basis for subject matter jurisdiction (or waiver of the United States' sovereign immunity) here. (*Id.* at 6-9.) CMS contends that the only potentially applicable jurisdictional basis for the type of relief sought here—the reversal of an administrative decision by the DAB—would be an appeal pursuant to 42 U.S.C. § 1316(e)(2)(C), but AHCCCS cannot satisfy the requirements of that provision because it requires that relief be sought within 60 days of the issuance of an adverse DAB

decision. (*Id.*) CMS further contends that AHCCCS cannot rely on equitable tolling as a basis for overcoming its failure to comply with the 60-day deadline because there is no allegation that CMS engaged in fraud, AHCCCS had actual notice of the underlying decision by January 2020, and AHCCCS's allegations are thus, at most, sufficient to establish excusable neglect, which is not enough to trigger equitable tolling. (*Id.*) Second, CMS argues that AHCCCS's reliance on Rule 60 is misplaced because it only authorizes challenges to judgments and orders issued in civil cases, not administrative actions taken by government agencies. (*Id.* at 9-10.) Third, CMS argues that, even assuming Rule 60(d) applies here and jurisdiction exists, AHCCCS "fails to state a claim for an independent action" because AHCCCS cannot establish the essential elements of such a claim, such as the necessity of preventing a grave miscarriage of justice and the absence of an adequate remedy at law. (*Id.* at 10-12.)

AHCCCS opposes CMS's motion. (Doc. 16.) As for CMS's first argument, AHCCCS doesn't dispute that it must demonstrate the existence of a jurisdictional basis independent of Rule 60(d) but argues that both 42 U.S.C. § 1316(e) and the Administrative Procedures Act, 5 U.S.C. § 704, provide jurisdiction and "[a]lternatively, if equitable tolling does not apply, jurisdiction exists under 28 U.S.C. § 1331 to determine whether Defendant has violated AHCCCS's right to procedural due process by failing to give the notice required by 45 C.F.R. §16.21." (*Id.* at 3-4.) With respect to equitable tolling, AHCCCS further argues that (1) as a legal matter, such tolling must be deemed available under 42 U.S.C. § 1316(e) (*id.* at 5-8); and (2) as a factual matter, it is entitled to equitable tolling, even though it "is *not* contending the government deliberately 'conceal[ed]' the DAB decision," because "notification of the DAB decision was not received, this suggests a clerical mistake that was unusual, beyond AHCCCS's control, and correctable" (*id.* at 8-12). AHCCCS acknowledges that its finance division received a copy of the decision in January 2020 in conjunction with a request to "return . . . the disallowed funds (which CMS already retained)" but notes that "the Finance personnel were not involved in the DAB appeal and their only concern was in correcting CMS about which party held the funds."

(*Id.* at 11.) To that end, AHCCCS argues that the finance personnel's "assumption that the attorneys knew of the proceedings at the DAB without their reminder was reasonable and justifiable," such that there was no negligence, and in the alternative cites cases suggesting that any neglect should be considered "excusable" under the circumstances. (*Id.* at 11-12.) As for CMS's second argument, AHCCCS argues that the cases cited by CMS are distinguishable because they involved challenges under Rule 60(b) (as opposed to Rule 60(d)) and did not "involve[] the equitable considerations underlying independent action relief at issue herein." (*Id.* at 15-17.) As for CMS's third argument, AHCCCS argues that it has stated a plausible claim for relief under the independent action doctrine because it has "a meritorious claim regarding CMS's sampling methodologies," it was diligent in that it "reasonably and justifiably relied on the DAB E-File system to notify it of the DAB's decision, it has no remedy other than relief from this Court, and "it would be manifestly unconscionable to allow Defendant to obtain judgment by default if the reason AHCCCS did not appeal was failure of Defendant's DAB E-File system to provide notice of the DAB's decision." (*Id.* at 14.)

In reply, CMS argues that subject-matter jurisdiction is lacking because 42 U.S.C. § 1316(e) is the "exclusive jurisdictional basis" for the relief AHCCCS seeks and that AHCCCS is not entitled to equitable tolling under that statute (which CMS does not deny is theoretically available) because (1) the DAB's records reflect that it sent Counsel a notification email on December 27, 2019, (2) one possible explanation for Counsel's nonreceipt of the email was that it was "blocked by spam or other filters," (3) Counsel could have found the decision by checking the DAB's website at any time, and (4) AHCCCS received actual notice in January 2020, such that AHCCCS has at most shown a "garden variety of excusable neglect." (Doc. 17 at 3-5.) As for its second dismissal argument, CMS contends that AHCCCS has failed to cite to any authority to rebut CMS's argument that "Rule 60 presupposes the existence of some form of judgment, order, or proceeding from a court." (*Id.* at 5.) CMS further contends that "Congress provided Plaintiff a specific statutory mechanism to review the DAB's order," so "Plaintiff's

position that Rule 60 permits the district court to exercise its equitable jurisdiction for an independent action over an administrative agency decision would directly contradict Congress'[s] statutory scheme as well as the admonition in Fed. R. Civ. P. 82 that the Federal Rules of Civil Procedure 'not extend' the jurisdiction of the district courts." (*Id.* at 6-7.) Finally, as for its third dismissal argument, CMS largely reiterates the points made in its motion. (*Id.* at 7-9.)

II.     Analysis

As a threshold matter, the FAC incorrectly identifies 42 U.S.C. § 1316(e)(2)(*A*) as the relevant statutory provision bearing on AHCCCS's appellate rights. (Doc. 5 ¶ 5.) That provision governs how a state may seek review of a CMS disallowance decision *by* the DAB. *Id.* ("A State may appeal a disallowance of a claim for federal financial participation . . . during the 60-day period that begins on the date the State receives notice of the disallowance . . . to the Departmental Appeals Board . . . by filing a notice of appeal with the Board."). Here, it is undisputed that AHCCCS timely and properly sought review by the DAB after CMS issued a disallowance decision in June 2018.

AHCCCS wishes to seek review *of* the DAB's December 27, 2019 decision upholding the denial of CMS's disallowance decision. That process is governed by § 1316(e)(2)*(C)*.[3] There appears to be no dispute in this regard. In its response brief, AHCCCS provides the full text of § 1316(e)(2)(C) and acknowledges that although "deadlines for other limits set in 42 U.S.C. § 1316 run from the date of receipt of the triggering action or decision"—including § 1316(e)(2)(A), cited in a footnote—"the deadlines for actions in response to decisions of the DAB run from the date of the decision [pursuant to § 1316(e)(2)(C)], regardless of when (or if) the decision is received." (Doc. 16 at 5-6.)

---

[3]     There are technically two routes for seeking review of a DAB decision: *first*, by filing a motion for "reconsideration . . . during the 60-day period that begins on the date of the Board's decision," *id.* § 1316(e)(2)(B); or *second*, by seeking "judicial review . . . by filing an action in any United States District Court located within the appealing State," "if no motion for reconsideration was filed within the 60-day period specified in subparagraph (B), during such 60-day period," *id.* § 1316(e)(2)(C)(i).

- 7 -

With this background in mind, the proper way for AHCCCS to seek judicial review of the DAB's decision in this Court would have been to file an action under 42 U.S.C. § 1316(e)(2)(C). AHCCCS states that, during the parties' meet-and-confer process, CMS did not object to the failure to specifically cite § 1316(e)(2)(C) as grounds for jurisdiction and notes that "[s]uch objection could have been, and can be, cured by amending the Petition." (Doc. 16 at 3 n.1.) Indeed, AHCCCS should have cited § 1316(e)(2)(C) as the *basis* of the action—rather than bringing this action pursuant to Rule 60(d)(1) of the Federal Rules of Civil Procedure.

Below, the Court explains why Rule 60(d)(1) is not the proper mechanism for bringing this action. Nevertheless, the parties have adequately briefed whether the action could have been brought under § 1316(e)(2)(C), so for purposes of judicial efficiency, the Court will also resolve whether the missed deadline for filing an action under § 1316(e)(2)(C) can be equitably tolled, such that the case can proceed with a second amended complaint.

### A. **Rule 60(d)(1) Is Inapplicable**

Although AHCCCS suggests in the FAC that it is seeking relief "pursuant to Rule 60(d)(1)" (Doc. 5 ¶ 6), this formulation misunderstands the nature of an independent action. As one treatise explains:

> Rule 60(d)(1) states that Rule 60 does not limit a court's power to "entertain an independent action to relieve a party from a judgment, order, or proceeding." *This is not an affirmative grant of power but merely allows continuation of whatever power the court would have had to entertain an independent action if the rule had not been adopted.* The provision preserves the power as it was defined by "established doctrine." The reference to "independent action" is to what had been historically known simply as an independent action in equity to obtain relief from a judgment.

11 Wright & Miller, Federal Practice and Procedure § 2868 (3d ed. Apr. 2021 update) (citations omitted) (emphasis added). Thus, it is not enough for AHCCCS to argue that it is seeking relief "pursuant to" Rule 60(d)(1)—instead, AHCCCS must affirmatively establish why the relief it is seeking falls within the established doctrine for an independent

action in equity. *See also In re Hunter*, 66 F.3d 1002, 1005 (9th Cir. 1995) ("[Rule 60] is silent on how independent actions are to be treated other than to state that the rule is not a limitation on such actions."); *Gillis v. Chase*, 894 F.3d 1, 3 (1st Cir. 2018) ("Rule 60(d)(1) is not an affirmative grant of power; it merely underscores that Rule 60 does not limit a court's pre-existing power in equity to entertain an independent action to remedy a 'grave miscarriage of justice.'") (citations omitted); *Barrett v. Sec. of Health & Human Servs.*, 840 F.2d 1259, 1262 (6th Cir. 1987) ("At this point it will also be beneficial to clarify the nature of plaintiff's action. Plaintiff continually asserts that this is an independent action 'pursuant to Rule [60]' This is not entirely accurate."); 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 60, at 283-84 (2021) ("An independent action is distinct from relief under Rule 60, and Rule 60 does not purport to say when an independent action is permissible. Rather, Rule 60 merely makes clear that it does not bar such an action if one is available.") (citations omitted).

Here, there is no basis for an independent action in equity. "[E]quitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009). *See also Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75-76 (1992) ("[I]t is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief."). AHCCCS already has an available avenue for seeking judicial review of the DAB's decision—42 U.S.C. § 1316(e)(2)(C). Given the availability of this avenue for relief, which has an established statutory basis, there is simply no reason to allow AHCCCS to proceed by way of an independent action in equity, which is "available only in cases of unusual and exceptional circumstances," *Barrett*, 840 F.2d at 1263 (citation and internal quotation marks omitted), and "should be available only to prevent a grave miscarriage of justice," *United States v. Beggerly*, 524 U.S. 38, 47 (1998).

Thus, Rule 60(d)(1) is inapplicable. Because there is no basis for an independent action in equity, the Court need not reach CMS's other arguments challenging such an action. The FAC is dismissed under Rule 12(b)(6) for failure to state a claim. *Sagers v.*

*Arizona State Univ.*, 2021 WL 4894318, 3 n.*3 (D. Ariz. 2021) ("Although Defendants seek relief under Rule 12(b)(1), which authorizes dismissal based on a lack of subject-matter jurisdiction, Defendants' challenge . . . is arguably better characterized as a Rule 12(b)(6) challenge because it goes to the validity of the underlying cause of action.").

### B. **Equitable Tolling Under 42 U.S.C. § 1316(e)(2)(C)**

As noted, AHCCCS has requested leave to amend in the event of dismissal. (Doc. 16 at 3 n.1, 17.) Although CMS does not directly address this request in its reply, the Court construes CMS's arguments regarding the (un)availability of equitable tolling as an argument that any amendment request should be denied because amendment would be futile. Accordingly, the Court will resolve address whether this action could be timely brought pursuant to 42 U.S.C. § 1316(e)(2)(C). This approach, in turn, confirms that the Court may consider the factual assertions set forth in the declarations provided by AHCCCS for purposes of assessing whether equitable tolling is potentially available. Whether or not those assertions (to the extent they go beyond what is alleged in the FAC) would be properly before the Court for purposes of assessing the validity of the FAC under Rule 12(b)(6), they are properly before the Court for purposes of assessing whether granting leave to amend would be futile. 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 15, at 438-39 (2021) ("It is standard practice—and the best practice—for the [party seeking leave to amend] to attach a copy of the proposed amended complaint. Doing so is the best way of providing the details required by Rule 7(b)(1). That said, nothing in Rule 7 or Rule 15 specifies that attaching a copy of the proposed amended complaint is the only permissible way to supply the needed details.").

As noted, § 1316(e)(2)(C) requires a state seeking review of an adverse DAB decision to file an action for judicial review within 60 days of when the decision was issued. Here, the decision was issued on December 27, 2019, but AHCCCS did not initiate this action until June 1, 2021. This was obviously outside the 60-day window.

AHCCCS acknowledges that, to overcome this time bar, it would need to establish an entitlement to equitable tolling. (Doc. 16 at 3 ["The issue is whether 42 U.S.C.

§ 1316(e)(2)(C), which required AHCCCS's appeal from the DAB to be filed withing 60 days of the decision, must be construed to preclude equitable tolling . . . ."].) CMS, in turn, does not dispute that equitable tolling is theoretically available under § 1316(e)(2)(C) but contends that the facts of this case fail to support a claim for equitable tolling. (Doc. 17 at 3.)

There is a "rebuttable presumption in favor of equitable tolling for statutes of limitations." *Smith v. Davis*, 953 F.3d 582, 592 (9th Cir. 2020). "Equitable tolling operates apart from any statutory provision." *Id.* Courts should employ a "flexible, circumstance-specific approach" when determining whether equitable tolling is appropriate. *Id.* at 593.

A litigant "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Fla.*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). For the first element, a litigant must demonstrate "that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith*, 953 F.3d at 598-99. "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 560 U.S. at 653 (citations omitted). The second element of this test is "met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee Indian Tribe of Wis. v. United States*, 136 S.Ct. 750, 756 (2016). "[P]rinciples of equitable tolling . . . do not extend to . . . a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). The "extraordinary circumstance" must have "prevented a petitioner acting with reasonable diligence from making a timely filing." *Smith*, 953 F.3d at 600. This is not "a rigid 'impossibility' standard," and the court "is not bound by 'mechanical rules' and must decide the issue based on all the circumstances of the case before it." *Id.*

Here, the facts do not appear to be in dispute. AHCCCS submitted three declarations as evidence in its favor, while CMS submitted no evidence and never disputed

any of AHCCCS's evidence. According to Counsel's declaration, "[t]he DAB system alerts the parties by e-mail when any document is filed in a case." (Doc. 16-1 ¶ 6.) The last notice Counsel received from the DAB in this case was on September 10, 2019, after Counsel filed AHCCCS's final memorandum. (*Id.* ¶ 7.) Counsel avows that he "checked for notice of the decision every day from September 2019 until May 8, 2021," and that every month from October 2019 through April 2021 he reported to AHCCCS's in-house counsel that the parties were still "awaiting a decision." (*Id.* ¶¶ 9, 18.) Counsel declares that if the notice had been received, "it would have been impossible to overlook and would still be in [his] computer along with all the other messages received that day" (*id.* ¶ 18) and that his computer "has needed no repairs and has no filters that would have sent the notification in question to 'spam' or 'junk mail'" (*id.* ¶ 19).[4] Counsel also notes that he has received similar emails from DAB E-File (*id.*), which suggests that there is no filter blocking receipt of these emails. Furthermore, Counsel reached out to Kevin Pease, who was counsel for CMS at the time this case was being litigated before the DAB, to ask for a copy of the notification he received from the DAB, but Mr. Pease also "could not find any notification from the DAB that a decision had been issued." (*Id.* ¶ 16.) The most reasonable conclusion is that the DAB E-File system malfunctioned or some other technological failure beyond AHCCCS's control prevented the email from being successfully transmitted.

Counsel's reliance on the DAB E-File notification was reasonable under the circumstances. The DAB had sent him notifications this way in the past. (*Id.* ¶¶ 7, 19.) Although Counsel could have regularly checked the DAB website to see if a decision had been posted, this would have been an unjustifiable waste of time—there was no reason to check the website when Counsel had every reason to believe he would receive the decision by email. Thus, under the circumstances, checking "daily" for a decision to arrive via

---

[4] Although CMS observes in its reply that "the DAB's guidance for using its e-filing system explicitly states that parties assume the risk of not receiving email notifications and requires parties to ensure that DAB e-mail notifications are not blocked by spam or other filters" (Doc. 17 at 4), CMS does not respond to Counsel's avowal that no such filters were in place on his computer.

email (*id.* ¶ 7) was reasonably diligent. It was also reasonably diligent for Counsel to wait to check the docket index until May 8, 2021, at a time when "the delay had begun to seem suspicious" (*id.* ¶ 20),[5] and it was reasonably diligent for AHCCCS to file this action 24 days later, on June 1, 2021.

Moreover, considering that e-filing systems and email transmissions generally function properly, and courts and attorneys justifiably rely on them to do so, the failure of the DAB E-Filing system to successfully email the decision to Counsel—the only form of notification the DAB uses—is an extraordinary circumstance beyond AHCCCS's control. *Diaz v. Kelly*, 515 F.3d 149, 155 (2d Cir. 2008) ("[A] court's failure to send notice within a reasonable time after entry of an order . . . can provide a basis for equitable tolling."); *cf. Hansen v. Astrue*, 2012 WL 1551887, *4 (W.D. Pa. 2012) ("[I]t would be inequitable if it turned out that Hansen had to suffer the consequences of an error made by . . . an electronic malfunction in the Court's ECF system.").

The fact that CMS sent a copy of the DAB decision to the AHCCCS finance department in January 2020, alongside a request to "return . . . the disallowed funds (which CMS already retained)" (Doc. 16 at 11), does not alter this analysis. AHCCCS is a large state agency. It cannot be the case that sending a copy of the DAB decision to anyone who works there, regardless of their role, is sufficient to provide notice to AHCCCS that a decision had been issued. When the finance department received a copy of the DAB decision—not from the DAB but from CMS—it was provided in support of a request to return funds, so the finance department reasonably focused on the request itself—"the Finance personnel were not involved in the DAB appeal and their only concern was in correcting CMS about which party held the funds." (*Id.* at 11, citing Doc. 16-3 ¶¶ 6-7.) It would have been quite odd, under the circumstances, for a member of the AHCCCS finance department to receive the decision and think that perhaps neither the in-house counsel or

---

[5] It took a long time for the delay to become suspicious because Counsel believed the delay was due to "wrestling with the novel issue" raised (*id.* ¶ 10), and at any rate, "lengthy waits" were common in this sort of litigation—indeed, in a recent case, AHCCCS waited a similar length of time, "from July 9, 2018, until February 18, 2020," for a decision from this Court (*id.* ¶ 12).

other powers-that-be at AHCCCS who were involved in the litigation, nor their outside counsel, had seen this decision and that it was incumbent upon someone in the finance department to provide a copy of this decision to the people who should have already been aware of it. The fact that someone at AHCCCS who had no involvement with the litigation received a copy of the DAB decision (secondhand, not from the DAB itself) cannot suffice to establish that AHCCCS had notice of the decision. Although it would have been particularly serendipitous if the finance department had, for some reason, passed the copy of the decision along to the people at AHCCCS who were involved in the litigation or to AHCCCS's counsel, the absence of such serendipity does not alter the fact that an extraordinary circumstance—the DAB's failure to successfully send any notification of its decision—prevented AHCCCS, despite its diligence, from timely pursuing review.

The analysis would be different if AHCCCS had missed the deadline due to its own negligence. For example, in *Irwin*, the plaintiff, who wished to pursue Title VII claims against his employer, was required by statute to exhaust such claims before the Equal Employment Opportunity Commission ("EEOC") and, if the EEOC rejected his claims, had 30 days from "receipt of the EEOC notice" to initiate a civil action. 498 U.S. at 91. In a letter dated March 19, 1987, the EEOC rejected the plaintiff's claims. *Id.* This letter arrived at the plaintiff's attorney's office on March 23, 1987, but because "the attorney was out of the country" at the time, the attorney did not read the EEOC's notice until April 10, 1987. *Id.* Meanwhile, the plaintiff directly received a copy of the EEOC's notice on April 7, 1987. *Id.* Finally, on May 6, 1987—that is, "44 days after the EEOC notice was received at his attorney's office, but 29 days after the date on which [the plaintiff] claimed he received the letter"—the plaintiff initiated a civil action in federal court. *Id.* The lower courts dismissed due the plaintiff's failure to comply with the 30-day deadline and the Supreme Court affirmed. First, the Court held that the 30-day deadline began running from the earlier of the dates on which the plaintiff and his attorney received the EEOC notice, because the relevant statute "requires only that the EEOC notification letter be 'received'" and "does not specify receipt by the claimant rather than by the claimant's designated

representative." *Id.* at 93. Thus, the Court held that the 30-day deadline began running on March 23, 1987—the date of receipt by the lawyer—rather than the later dates on which the plaintiff received the notice and the lawyer became aware of the notice. *Id.* Second, the Court further held that, although equitable tolling was potentially available under Title VII, the plaintiff was not factually entitled to equitable tolling because "the claimant failed to exercise due diligence in preserving his legal rights" and had instead established "what is at best a garden variety claim of excusable neglect." *Id.* at 457-58.

Unlike in *Irwin*, where it was the attorney's fault that he did not receive the notice when it was sent (because he left the country for an extended period of time and failed to arrange for someone else to tend to his professional matters in his absence), here it was not AHCCCS's fault, or the fault of its attorney, that the DAB email was never received. There was no neglect—excusable or not.[6] Another distinction between *Irwin* and this case is that the attorney in *Irwin* actually read the notice in time to file an action before the statutory deadline expired, but the attorney nevertheless missed the deadline. Not only was the attorney's international travel a far cry from an "extraordinary circumstance," it also didn't "prevent[] . . . filing before the deadline expired." *Smith*, 953 F.3d at 595. When a litigant is "impaired" for only "some portion of the limitations period," "equitable tolling is not available." *Id.*

In summary, the FAC must be dismissed in its current form because it improperly seeks relief "pursuant to Federal Rule of Civil Procedure 60(d)(1)" instead of pursuant to 42 U.S.C. § 1316(e)(2)(C). However, AHCCCS's request for leave to amend is granted because amendment would not be futile—an action under § 1316(e)(2)(C) would not be time-barred because AHCCCS can plead facts showing that the deadline to file the action

---

[6] In *Irwin*, the question of whether notice to the client, but not to the attorney, was sufficient to start the statute of limitations was not before the Court, as the plaintiff filed the action within 30 days of when he received the notice. At any rate, in *Irwin* the client was an individual who indisputably received notice, not an agency in which a copy of an administrative decision was received (secondhand) by someone who was uninvolved in the litigation, worked in a department that did not handle legal matters, and had no reason to believe the copy constituted the agency's first and only notice of the decision. (Doc. 16-3 ¶ 8.)

is subject to equitable tolling.

Accordingly,

**IT IS ORDERED** that CMS's motion to dismiss (Doc. 11) is **granted**. The FAC is dismissed.

**IT IS FURTHER ORDERED** that AHCCCS may file a second amended complaint ("SAC") within 14 days of the issuance of this order. To be clear, the SAC should bring an action under § 1316(e)(2)(C) that sets forth the reasons why AHCCCS is seeking review of the DAB decision. The SAC should also allege the facts supporting AHCCCS's claimed entitlement to equitable tolling.

**IT IS FURTHER ORDERED** that if AHCCCS does not file a SAC within 14 days of the issuance of this order, the Clerk shall enter judgment accordingly and terminate this action.

Dated this 28th day of January, 2022.

Dominic W. Lanza
United States District Judge